## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.**

MIGUEL JARAMILLO, Individually and
on Behalf of All Others Similarly Situated,

Plaintiff,

v.                                                  JURY TRIAL DEMANDED

DISH NETWORK CORPORATION, W.
ERIK CARLSON, PAUL W. ORBAN, and
CHARLES W. ERGEN,

Defendants.

---

## CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

---

Plaintiff Miguel Jaramillo ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding DISH Network Corporation ("Dish" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Dish securities between February 22, 2021 and February 27, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Dish, together with its subsidiaries, provides pay-TV services in the United States. The Company operates in two segments, Pay-TV and Wireless.  Dish offers video services under the DISH TV brand; and programming packages that include programming through national broadcast networks, local broadcast networks, and national and regional cable networks, as well as regional and specialty sports channels, premium movie channels, and Latino and international programming packages.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company overstated its operational efficiency and maintained a deficient cybersecurity and information technology infrastructure; (ii) as a result of the foregoing, the Company was unable to properly secure customer data, leaving it vulnerable to access by  malicious third parties; (iii) the foregoing cybserscurity deficiencies also both rendered Dish's operations susceptible to widespread service

outages and hindered the Company's ability to respond to such outages; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.      On February 24, 2023, the Company announced that a "network outage" caused the Company's websites and apps to cease functioning, subjected customers to authentication issues when signing into TV channel apps using their Dish credentials, and appeared to render the Company's call center phone numbers unreachable.

5.      Then, on February 28, 2023, Dish confirmed that it had "determined that the outage was due to a cyber-security incident and notified appropriate law enforcement authorities," adding that the "threat agent" behind the ransomware attack stole date from Dish's compromised systems, potentially containing personal information.

6.      On this news, Dish's stock price fell $0.79 per share, or 6.48%, to close at $11.41 per share on February 28, 2023.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Dish is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Dish securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Dish is a Nevada corporation with principal executive offices located at 9601 South Meridian Boulevard, Englewood, Colorado.  Dish's common stock trade in an efficient market the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "DISH".

14.     Defendant W. Erik Carlson ("Carlson") has served as the Company's Chief Executive Officer ("CEO") and President at all relevant times.

15.     Defendant Paul W. Orban ("Orban") has served as the Company's Chief Financial Officer ("CFO") and Executive Vice President at all relevant times.

16.     Defendant Charles W. Ergen ("Ergen") has served as the Company's Executive Chairman at all relevant times.

17.     Defendants Carlson, Orban, and Ergen are sometimes referred to herein as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Dish's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Dish's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Dish, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

19.     Dish and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Dish, together with its subsidiaries, provides pay-TV services in the United States. The Company operates in two segments, Pay-TV and Wireless.  Dish offers video services under the DISH TV brand; and programming packages that include programming through national broadcast networks, local broadcast networks, and national and regional cable networks, as well as regional and specialty sports channels, premium movie channels, and Latino and international programming packages.

**Materially False and Misleading Statements Issued During the Class Period**

21.     The Class Period begins on February 22, 2021, when Dish filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operational results for the fiscal year ended December 31, 2020 (the "2020 10-K").  With respect to the Company's Pay-TV business strategy, the 2020 10-K highlighted, in relevant part, its purported commitment to customer service and delivering value to its customers:

> Our Pay-TV business strategy is to be the best provider of video services in the United States by providing products with the best technology, ***outstanding customer service, and great value***.  We promote our Pay-TV services as providing our subscribers with a better "price-to-value" relationship than those available from other subscription television service providers.
>
> ***
>
> - *Outstanding Customer Service*.  We strive to provide outstanding customer service by improving the quality of the initial installation of subscriber equipment, improving the reliability of our equipment, better educating our customers about our products and services, and ***resolving customer problems promptly and effectively when they arise***.
>
> - *Great Value*.  We have historically been viewed as the low-cost provider in the pay-TV industry in the United States.  With our DISH TV services, we are currently focused on our brand promise "Tuned into You" and a ***message of Service, Value and Technology***. For example, for certain new and qualifying customers we guarantee our pricing for certain programming packages and equipment for a two-year commitment period.  We also offer a differentiated customer experience with our award winning Hopper Platform that integrates voice control powered by Google Assistant, access to apps including Netflix, Prime Video and You Tube, and the ability to watch live, recorded and On Demand content anywhere with the DISH Anywhere mobile application.  As another example, our Sling Orange service and our Sling Blue service are two of the lowest priced live-linear online streaming services in the industry.

(Emphases added.)

22.     Further, with respect to the Company's retail wireless business strategy, the 2020

10-K stated, in relevant part:

> Our retail wireless business strategy is to expand our current target segments and profitably grow our subscriber base by acquiring and retaining high quality subscribers while we complete our 5G Network Deployment.  We intend to acquire high quality subscribers by providing competitive offers, increased consumer value and innovative new value-added services that better meet those subscribers' needs and budget.  ***We intend on retaining those subscribers through compelling new value-added services and outstanding customer service.***  As we work to integrate our retail wireless brands one of our focuses will be to ensure that our Pay-TV subscribers are aware of the increased value available to them through our retail wireless brands.

(Emphasis added.)

23.     Finally, in the 2020 10-K's recitation of the Company's operational and service

delivery risks, Dish stated, in relevant part:

> [A]lthough we take protective measures designed to secure our information technology systems and endeavor to modify such protective measures as circumstances warrant, our information technology hardware and software infrastructure and communications systems, or those of third parties that we use in our operations, may be vulnerable to a variety of interruptions, including, without limitation, natural disasters, terrorist attacks, telecommunications failures, cyber-attacks and other malicious activities such as unauthorized access, physical or electronic break-ins, misuse, computer viruses or other malicious code, computer denial of service attacks and other events that could disrupt or harm our business. These protective measures may not be sufficient for all eventualities and may themselves be vulnerable to hacking, malfeasance, system error or other irregularities.

These vague and generalized statements failed to disclose to investors the known specific risks

arising from Dish's deficient cyber security and information technology infrastructure.

24.     Appended to the 2020 10-K as exhibits were signed certifications pursuant to the

Sarbanes-Oxley Act of 2002 by Defendants Carlson and Orban, attesting that "the information

contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.     That same day, Dish hosted an earnings call with investors and analysts to discuss the Company's Q4 and full year 2020 results (the "Q4 2020 Earnings Cal").  During the scripted portion of the Q4 2020 Earnings Call, Defendant Carlson stated, in relevant part:

> We also had a solid year in pay-TV despite the headwinds presented by the pandemic. This was driven by our continued discipline and better execution in both DISH TV and SLING TV. ***We are focused on providing products and services with the best technology, outstanding customer service and a great value.*** We strive to offer our customers with a better price-to-value relationship and those available from other pay-TV subscription providers. And through our efforts, we were recognized by our customers for the third year in a row as being number one in customer satisfaction with J.D. Power in 2020.

(Emphasis added.)

26.     On April 7, 2021, Dish issued a press release touting its partnership with the Finnish telecommunication corporation Nokia Corporation ("Nokia") and purported implementation of Nokia's NetGaurd Security suite to strengthen its network against intrusions. The press release stated, in relevant part:

> Nokia today announced that DISH has selected Nokia's NetGuard solution to assist with securing the United States' first cloud-native, Open RAN-based 5G wireless network. This partnership will enable DISH to safeguard 5G network slices, which will be provisioned to support enterprise and wholesale customers.
>
> Each 5G network slice can extend from the device through the radio, access, transport and core networks to each application server, and every path can be isolated and secured. Nokia's NetGuard Security suite will be deployed within a cloud-native environment to provide security services through slice-specific Service Level Agreements (SLAs).
>
> DISH is deploying NetGuard to support the security orchestration, automation and response capabilities needed to rapidly scale its network and intelligently assess and resolve cyber incidents with minimal manual intervention.

DISH will support new business models with network slicing for both enterprise and wholesale customers. Nokia's NetGuard security operations enable DISH to efficiently and accurately respond to evolving security threats using automated tools, extended analytics, integrated collaboration processes and an optimized user experience.

27.     On April 8, 2021, Dish issued a press release entitled "DISH prioritizes security across all aspects of 5G network."  The press release stated, in relevant part:

DISH today issued a white paper describing another key differentiator of its cloud-native Open Radio Access Network (O-RAN): security. While DISH has highlighted the benefits to consumers and enterprises that will result from its cloud-native architecture, this marks the first time the company has outlined some of the key security features, woven into the fabric of its network.

This white paper discusses how DISH is prioritizing network, system and end-user security from the outset of network deployment, the importance of a trusted software supply chain and how DISH's 5G network security is more agile and scalable than traditional networks. In addition, the paper highlights how DISH's strategic security partners contribute to the security model of DISH's cloud-native, 5G O-RAN.

28.     On September 23, 2021, Dish issued a press release entitled "DISH Named #1 Nationally in "Overall Customer Satisfaction" by J.D. Power for Four Straight Years."  The press release stated, in relevant part:

Today, DISH was named #1 in Overall Customer Satisfaction with TV Service by J.D. Power nationally for the fourth year in a row in the J.D. Power 2021 U.S. Residential Television Service Provider Satisfaction Study. DISH is the most awarded brand nationally for customer satisfaction with TV service by J.D. Power.

"***We are dedicated to going above and beyond to serve our customers***, and we're proud to offer solutions and support that customers trust. Earning this J.D. Power award for a fourth year in a row is a testament to our team's service to DISH customers and the hard work we deliver every day to exceed our customers' expectations," said Erik Carlson, DISH chief executive officer. "I want to thank all of our team members and customers for making us number one for the fourth straight year."

Our brand promise is built around 'Tuned in to You,' and focuses on listening to our customers, being advocates on their behalf and delivering the best service,

technology and value in the market," said Brian Neylon, group president, DISH TV. "I want to give an extra-special thanks to all of our in-home service technicians, our customer service, sales and loyalty agents, and all the team members who support them. Keeping customers top of mind in everything we do is a core principle of ours and this recognition helps show our efforts."

In addition to earning #1 in "Overall Customer Satisfaction," DISH ranked #1 in six study factors, including "Performance and Reliability," "Features and Functionality," "Customer Service," "Cost of Service," "Billing and Payment" and "Communications and Promotions" among nationally ranked brands.

(Emphasis added.)

29.     On January 25, 2022, Dish issued a press release entitled "DISH Adopts Verica's Chaos Engineering Platform to Test and Ensure Reliability of its 5G Smart Network." The press release stated, in relevant part:

DISH [. . .] will leverage the Verica Continuous Verification Platform (CVP) for Kubernetes and Kafka on its 5G Smart Network™. Verica uses a chaos engineering approach to simulate adverse conditions, ***allowing DISH to proactively identify and fix software issues before customers experience connectivity disruption***.

As DISH builds its smart network, the company has focused on reliability from the very beginning. Verica's Continuous Verification Platform, including its out-of-the-box Kubernetes and Kafka verifications, proactively tests safety margins in a system before they disrupt business, making it a fitting platform to help DISH prioritize network reliability.

*** 

***This partnership allows DISH to operate at optimum reliability*** and provide customers with the best 5G network available. Verica delivers a crucial tool in ***helping DISH engineers know the limits of the network and software behind the network, as well as how to make improvements before an outage incident***.

"Verica essentially helps us test and verify our platform layer itself as well as everything on top through chaos engineering. These tests allow us to see how edge conditions affect performance and reliability," said Marc Rouanne, executive vice president and chief network officer, DISH Wireless. "By leveraging Verica's CVP tooling and philosophy, DISH can deliver on our ambitious reliability and availability goals as we continue to accelerate innovation."

(Emphases added.)

30.    On February 24, 2022, Dish filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the fiscal year ended December 31, 2021 (the "2021 10-K").  The 2021 10-K contained a substantively similar discussion of the Company's Pay-TV and retail wireless business strategies, and recitation of the Company's operational and service delivery risks, as discussed, *supra*, in ¶¶ 21-23, the latter of which failed to disclose to investors the known specific risks arising from Dish's deficient cyber security and information technology infrastructure.

31.    Appended to the 2021 10-K as exhibits were signed certifications pursuant to SOX by Defendants Carlson and Orban, attesting that "the information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

32.    On September 29, 2022, Dish issued a press release entitled "DISH Ranked #1 in Customer Satisfaction Nationally for 5 Consecutive Years by J.D. Power."  The press release stated, in relevant part:

> For the fifth year in a row DISH has been named #1 in Customer Satisfaction among Cable/Satellite TV Service Providers Nationally, in the J.D. Power 2022 U.S. Television Service Provider Satisfaction Study. DISH has earned more J.D. Power customer satisfaction awards than any other cable/satellite TV service brand nationally.
>
> Since our start, DISH has been home to bold ideas, ***high-quality services and a commitment to our customers***," said Erik Carlson, president and chief executive officer, DISH Network. "Having our customers rate us #1 in customer satisfaction for five years in a row is a testament to our team's dedication to customer care, and our exceptional products and services. I want to thank our customers for their vote of confidence and also our team members for their hard work and drive for excellence."

"Customer satisfaction is an important indication of how well a business runs," said Brian Neylon, executive vice president and group president, DISH TV. "We believe winning this award means that DISH is focused on the right things, and our customers notice. We pride ourselves on our service, technology and value, and we keep our customers as a top priority."

In addition to earning #1 in "Customer Satisfaction" for cable/satellite TV service nationally, DISH was also ranked #1 in six study factors, including "Performance and Reliability," "Features and Functionality," "Customer Care," "Cost of Service," "Billing and Payment" and "Communications and Promotions," among nationally ranked brands.

(Emphasis added.)

33.      The statements referenced in ¶¶ 21-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company overstated its operational efficiency and maintained a deficient cybersecurity and information technology infrastructure; (ii) as a result of the foregoing, the Company was unable to properly secure customer data, leaving it vulnerable to access by  malicious third parties; (iii) the foregoing cybserscurity deficiencies also both rendered Dish's operations susceptible to widespread service outages and hindered the Company's ability to respond to such outages; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

34.      On February 24, 2023, the Company announced that a "network outage" caused the Company's websites and apps to cease functioning, subjected customers to authentication issues when signing into TV channel apps using their Dish credentials, and appeared to render the Company's call center phone numbers unreachable.

35.     Then, on February 28, 2023, in a Form 8K filed with the SEC, Dish stated, in

relevant part:

>   On February 23, 2023, DISH Network Corporation (the "Corporation")
>   announced on its earnings call that the Corporation had experienced a network
>   outage that affected internal servers and IT telephony.   The Corporation
>   immediately activated its incident response and business continuity plans designed
>   to contain, assess and remediate the situation. The services of cyber-security experts
>   and outside advisors were retained to assist in the evaluation of the situation.   The
>   Corporation has determined that the outage was due to a cyber-security incident
>   and notified appropriate law enforcement authorities.
>
>   On February 27, 2023, the Corporation became aware that certain data was
>   extracted from the Corporation's IT systems as part of this incident.   It is possible
>   the investigation will reveal that the extracted data includes personal information.
>   The measures described above are continuing while the Corporation, with the
>   assistance of third-party experts and advisors, investigates the extent of the cyber-
>   security incident.
>
>   The forensic investigation and assessment of the impact of this incident is
>   ongoing.   DISH, Sling and our wireless and data networks remain operational;
>   however the Corporation's internal communications, customer call centers and
>   internet sites have been affected.   The Corporation is actively engaged in restoring
>   the affected systems and is making steady progress.

36.     On this news, Dish's stock price fell $0.79 per share, or 6.48%, to close at $11.41

per share on February 28, 2023.

37.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline

in the market value of the Company's securities, Plaintiff and other Class members have suffered

significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise

acquired the Company's securities during the Class Period (the "Class"); and were damaged upon

the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Dish securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Dish or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Dish;

- whether the Individual Defendants caused Dish to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Dish securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Dish securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Dish securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

47.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in

connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Dish securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Dish securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Dish securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Dish's finances and business prospects.

51.     By virtue of their positions at Dish, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Dish, the Individual Defendants had knowledge of the details of Dish's internal affairs.

53.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Dish.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Dish's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Dish securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Dish's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Dish securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

54.     During the Class Period, Dish securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Dish securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said

securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Dish securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Dish securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

55.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

57.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     During the Class Period, the Individual Defendants participated in the operation and management of Dish, and conducted and participated, directly and indirectly, in the conduct of Dish's business affairs.  Because of their senior positions, they knew the adverse non-public information about Dish's misstatement of income and expenses and false financial statements.

59.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Dish's financial condition and results of operations, and to correct promptly any public statements issued by Dish which had become materially false or misleading.

60.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Dish disseminated in the marketplace during the Class Period concerning Dish's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Dish to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Dish within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Dish securities.

61.     Each of the Individual Defendants, therefore, acted as a controlling person of Dish. By reason of their senior management positions and/or being directors of Dish, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Dish to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Dish and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Dish.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  March 23, 2023                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

DocuSign Envelope ID: 8F81E139-64E4-4DA1-9C74-7841C125EC12

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, _Miguel jaramillo_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Dish Network Corporation ("Dish") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Dish securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Dish securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Dish securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

DocuSign Envelope ID: 8F81E139-64E4-4DA1-9C74-7841C125EC12

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** <u>3/16/2023</u>
                   **(Date)**

-DocuSigned by:

*Miguel Jaramillo*
**(Signature)**
36250C3276584CD...

Miguel jaramillo
**(Type or Print Name)**

**DISH Network Corporation (DISH)**                                                    **Miguel Jaramillo**

### List of Purchases and Sales

| Transaction<br>Type | Date | Number of<br>Shares/Unit | Price Per<br>Share/Unit |
|---|---|---|---|
| Purchase | 2/9/2023 | 12 | $14.1100 |
| Purchase | 2/14/2023 | 8 | $13.8500 |
| Purchase | 2/16/2023 | 10 | $14.1000 |